# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

DANGELO SHAUN LUX,

        Plaintiff,

                                      Case No. 23-cv-0786-bhl

    v.

THE CITY OF WHITEWATER, et al,

        Defendants.

---

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS IN PART AND DENYING IN PART

---

Plaintiff Dangelo Lux asserts claims under 42 U.S.C. § 1983 against the City of Whitewater, former Whitewater Chief of Police Aaron Raap, and Whitewater Police Officers Ray Boro, Hayden Beecraft, and Taylor Krahn for alleged violations of his Fourth and Fourteenth Amendment rights during a traffic stop. Lux sues Chief Raap in his official capacity and the officers in their individual capacities. All Defendants have moved to dismiss, insisting that Lux has failed to adequately plead his claims against them. Because Lux has failed to allege sufficient facts to support an equal protection claim, that claim will be dismissed. He has also failed to plead viable claims against the City and Chief Raap, and his claims against both will also be dismissed. But Lux has adequately pleaded a Fourth Amendment excessive force claim against Officers Boro, Beecraft, and Krahn. Accordingly, Defendants' motion will be granted in part and denied in part.

## BACKGROUND[1]

On September 4, 2021, shortly after midnight, Lux, an African American male, was driving friends to his home in Whitewater when his car was pulled over by Officer Boro. (ECF No. 14 ¶¶5, 13.) After the car was stopped, Officer Boro immediately called for Lux to exit the vehicle, using his name, even though Lux had not yet been asked for his ID at that time. (*Id.* ¶14.) Lux

---

[1] This Background is derived from Plaintiff's amended complaint, (ECF No. 14), the allegations in which are presumed true when considering a motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–56 (2007).

and his passengers exited the vehicle, and Officer Boro then immediately called for backup, even though Lux had not said or done anything illegal. (*Id*. ¶15.)

Officer Boro approached Lux, who was "completely cooperative" and not screaming, yelling, fighting, or otherwise engaging in suspicious or illegal activity. (*Id*. ¶16.) Officers Beecroft and Krahn arrived shortly thereafter. (*Id*. ¶17.) Officer Boro then asked Lux, by name, and his passengers to re-enter the vehicle. (*Id*. ¶18–19.) When Lux commented on Officer Boro's use of his name, the officer confirmed that he knew Lux by name and stated "[w]e talk to you all the time." (*Id*. ¶18.) Officer Boro told Lux that if he did not get back into his own car, Officer Boro would place him in the officer's vehicle. (*Id*. ¶19.) Officer Boro informed Lux that he was stopped because he rolled through a stop sign. (*Id*.)

Lux then told the passengers to get back into the car because he was "having a calm conversation" with Officer Boro. (*Id*. ¶20.) Officer Boro nevertheless requested assistance from additional police units. (*Id*.) As the passengers returned to the car and Lux spoke calmly, Officer Boro said "now we are cool" and asked Lux to sit on the curb or inside the car. (*Id*. ¶¶20–21.) Lux asked Officer Boro to confirm that he was "being very civil" when Officers Deecroft and Krahn approached but Officer Boro requested still more officers come to the scene. (*Id*. ¶21.)

Lux turned off the car and again asked the officers to confirm that everything was fine. (*Id*. ¶22.) Officer Boro responded that everyone was "cool." (*Id*.) Officer Boro then left Lux with the other officers while he spent several minutes questioning the passengers about their ages and whether there was anything illegal in the car. (*Id*.) He explained to the passengers that this was a routine traffic stop and that he had called for backup because he was worried about being assaulted. (*Id.*)

After speaking to the passengers, Officer Boro returned to Lux, asked him to confirm his last name, and requested his driver's license. (*Id.* ¶23.) Lux complied, gave the officer his license, and indicated he was nervous and did not "want to die tonight." (*Id*.) As Officer Boro confirmed that Lux's driver's license and license plates were valid, Lux asked what the officers wanted and stated that he was "just chilling." (*Id*. ¶24.)

About 20 minutes after being stopped, Officer Boro asked Lux to perform field sobriety tests. (*Id.*) After Lux performed the tests, Officer Boro asked him to submit to a preliminary breath test. (*Id.* ¶25.) When Lux declined, Officers Boro, Beecraft, and Krahn immediately "put hands" on him, and Officer Boro told Lux he was under arrest. (*Id.*) Officer Boro instructed Lux

to put his hands behind his back, but he could not comply because his arms were being held by the other officers. (*Id.* ¶26.) The officers repeated that he was under arrest and told him to stop resisting. (*Id.* ¶27.) Lux did not resist, but the officers continued yelling and, within seconds, began deploying their tasers on him, for multiple seconds in the back, stomach and lower abdominal areas. (*Id.* ¶¶27–30.) The prongs of the tasers remained on Lux for several minutes. (*Id.* ¶30.) Lux went to the ground, where each of the officers put a knee on him as Officer Boro forcibly handcuffed him. (*Id.* ¶31.) The officers held Lux face down on the ground for several minutes. (*Id.* ¶32.)

Lux contends the officers use of force was excessive and that he did not resist. (*Id.* ¶33.) He claims to have sustained severe physical and emotional injuries from their actions. (*Id.* ¶34.) He believes the officers stopped and mistreated him as harassment and retaliation for earlier contacts he had with Whitewater Police in 2018. (*Id.* ¶¶14, 35.)

## LEGAL STANDARD

When deciding a Rule 12(b)(6) motion to dismiss, the Court must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiff['s] favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016) (citing *Lavalais v. Village of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013)). A complaint must contain a "short and plain statement of the claim showing that [the plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, a complaint "must do more than recite the elements of a cause of action in a conclusory fashion." *Roberts*, 817 F.3d at 565 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint survives a 12(b)(6) motion when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). The complaint will be dismissed if it fails to allege sufficient facts to state a claim on which relief may be granted. *See Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1018 (7th Cir. 2013).

## ANALYSIS

Lux invokes 42 U.S.C. § 1983 and alleges that all Defendants violated his right to equal protection under the Fourteenth Amendment and that Officers Boro, Beecroft, and Krahn violated his Fourth Amendment rights by using excessive force in arresting him. (ECF No. 14 ¶¶36–54.) To state a claim under Section 1983, Lux must identify a person or persons acting under color of law who violated his federal rights. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1519–20 (7th Cir. 1990).

Defendants argue that Lux's complaint must be dismissed because he has failed to state claims against them. *See* Fed. R. Civ. P. 12(b)(6); (ECF Nos. 32, 33, 37.) They argue that his equal protection claim should be dismissed because the amended complaint's "allegations consist of threadbare legal conclusions without substantive fact[s]" to support Lux's claim. (ECF No. 33 at 11–14.) The officers argue that his excessive force claim should be dismissed because it is "premised upon legal conclusions of retaliation and racism." (*Id.* at 14–15.) And the City and Chief Raap argue they must be dismissed from this lawsuit because Lux has not met the standard to plead municipal liability under Section 1983 set forth in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). (ECF No. 33 at 4–10.) Because Lux has failed to plead sufficient facts to assert his equal protection or municipal liability claims, the Court will grant Defendants' motion as to those counts. But Lux has alleged enough facts to state an excessive force claim against the officers and that portion of Defendants' motion will be denied.

## I. Lux Has Not Pleaded Facts Sufficient to State an Equal Protection Violation.

Lux's first claim is that Defendants violated his Fourteenth Amendment equal protection rights "by unlawfully discriminating him on the basis of his race." (ECF No. 14 ¶39.) He further alleges that his equal protection rights were violated by the officers' failure to intervene and prevent the discriminatory actions of the other officers, and because the officers took "retaliatory actions from the previous arrests." (*Id.* ¶¶40–42.) Defendants argue that Lux's equal protection claim should be dismissed because he has not alleged sufficient facts to support an equal protection claim based on racial discrimination, retaliation, or a failure to intervene. (ECF No. 33 at 11–14.) The Court agrees with Defendants.

The Equal Protection Clause "prohibits intentional racial discrimination by state and local officials, and a person who is subjected to such discrimination may seek relief under 42 U.S.C. § 1983." *Taylor v. Ways*, 999 F.3d 478, 487 (7th Cir. 2021) (citing *Majeske v. Frat. Order of Police*,

94 F.3d 307, 311 (7th Cir. 1996); *Ratliff v. City of Milwaukee*, 795 F.2d 612, 624 (7th Cir. 1986)). To state an equal protection claim, a plaintiff must plausibly allege facts suggesting that "the defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose." *Chavez v. Ill. State Police*, 251 F.3d 612, 635–36 (7th Cir. 2001). To establish discriminatory effect, a plaintiff may allege that he belongs to a protected class, is otherwise similarly situated to members of the unprotected class, and was treated differently from members of the unprotected class. *Id.* at 636.

The amended complaint fails to plausibly allege an equal protection claim against any Defendant. While Lux alleges that he is African American, (ECF No. 14 ¶5), he offers no other facts that would support a plausible inference that any of the officers' actions against him were motivated by his race. Lux cannot base an equal protection claim on mere speculation concerning the officers' intentions and actions. *See Nunez v. Gerber*, No. 1:08-CV-011, 2008 WL 5220857, at *3 (N.D. Ind. Dec. 11, 2008) (concluding that plaintiff's assertions of discriminatory actions were "mere speculation and [did] not state a claim under the equal protection clause"); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

Lux's equal protection claim is not saved by his allegations that the officers retaliated against him because of his prior interactions with Whitewater Police. The Equal Protection Clause "does not establish a general right to be free from retaliation." *See Boyd v. Ill. State Police*, 384 F.3d 888, 898 (7th Cir. 2004) (quoting *Grossbaum v. Indianapolis–Marion Cnty. Bldg. Auth.*, 100 F.3d 1287, 1296 n.8 (7th Cir. 1996)). And without an underlying constitutional claim, Lux cannot assert claims against any of the officers for failure to intervene. *See Chavez*, 251 F.3d at 652.

In response, Lux argues that Officer Boro knew Lux before he even provided identification and called for backup immediately despite Lux's cooperation. (ECF No. 36 at 20.) But this allegation does not support an equal protection violation. Even if Officer Boro's actions were in retaliation for Lux's previous interactions with Whitewater Police, that would not be sufficient to establish that he treated Lux differently based on Lux's race. *See Boyd*, 384 F.3d at 898. To state an equal protection claim, Lux must allege that he was discriminated or retaliated against *because of* his race (or other protected characteristic). *See id.*; *Chavez*, 251 F.3d at 635–36. Lux provides only conclusory allegations to that effect. (*See* ECF No. 14 ¶¶35, 39, 42.)

Lux also argues that one can infer discrimination because he was treated differently than the passengers in his vehicle. (ECF No. 30 at 20–21.) As an initial matter, Lux's amended complaint does not allege that the passengers were of a different race than Lux. Moreover, even if it did, Lux ignores that he was the driver of the vehicle, while the others were merely passengers. There is nothing suspicious or suggesting of an equal protection violation for police officers to treat a driver of a pulled over car differently than the car's passengers.

Lastly, Lux responds by trying to introduce additional factual assertions through his briefing. He argues that, in 2018, he was stopped by a different City of Whitewater police officer (Officer Vander Steeg) who is not named in the amended complaint. (*Id.* at 20.) According to Lux, that officer used excessive force in arresting Lux unlawfully and the incident described in his amended complaint "is basically the same type of behavior from the City of Whitewater Police Department except this time, they added the use of tasers for ten (10) seconds." (*Id.*) None of these allegations are included in Lux's amended complaint, which only refers to this 2018 incident in passing. (*See* ECF No. 14 ¶¶12, 14.) Instead, Lux cites to his original complaint to support his argument. (*See* ECF No. 36 at 20.) But Lux's claim rises or falls based on the allegations in his current pleading, not sections of a superseded original complaint or allegations from a prior lawsuit related to the earlier incident. "It is axiomatic that an amended complaint supersedes an original complaint and renders the original complaint void." *Flannery v. RIAA*, 354 F.3d 632, 638 n.1 (7th Cir. 2004). Allegations "from an earlier complaint that are not included in a later complaint cannot be considered on a motion to dismiss." *Scott v. Chuhak & Tecson, P.C.*, 725 F.3d 772, 782–83 (7th Cir. 2013) (citing *Pirant v. USPS*, 542 F.3d 202, 207 (7th Cir. 2008)). Moreover, even these extraneous allegations have nothing to do with Lux's race and would therefore not support an equal protection claim. Because Lux's amended complaint does not plausibly allege that any Defendant discriminated against him due to his race, his equal protection claim will be dismissed.

## II.    Lux Has Properly Stated a Claim for Excessive Force Against Officers Boro, Beecroft, and Krahn.

Lux alleges that Officers Boro, Beecroft, and Krahn used excessive force in arresting him by "grabbing, tackling, injuring Plaintiff's neck, kneeling on Plaintiff['s back], pushing his face into cement/concrete, stomping on him, standing on his legs, and tasering him several times." (ECF No. 14 ¶49.) The officers argue that Lux's excessive force claim must be dismissed because it is premised on mere legal conclusions of retaliation and racism. (ECF No. 33 at 14–15.)

An excessive force claim in the context of an arrest is governed by the Fourth Amendment's prohibition against unreasonable seizures. *Graham v. Connor*, 490 U.S. 386, 3995 (1989). Whether the force used during an arrest is reasonable "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). The "reasonableness" of the force used is judged from the perspective of a reasonable officer at the scene and "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

The officers misstate the substantive allegations in the amended complaint. While Lux does make conclusory allegations of retaliation and racial discrimination, he also alleges that each of Officers Boro, Beecroft, and Krahn was personally involved in restraining him, tasering him, and forcibly holding him down for several minutes during his arrest. (ECF No. 14 ¶¶26–32.) And he alleges these uses of force occurred while Lux was being cooperative and had been stopped only for allegedly running a stop sign. (*Id.* ¶¶13, 16, 27.) These allegations are sufficient to state a Fourth Amendment claim for excessive force against Officers Boro, Beecroft, and Krahn.

## III.    Lux Has Not Plausibly Pleaded *Monell* Claims Against the City or Chief Raap.

Lux's amended complaint does not clearly indicate the basis for his claims against the City and Chief Raap. Unlike the excessive force claim, which is brought specifically against the arresting officers, Lux's equal protection claim does not specify which defendants Lux seeks to sue on this basis. (*See* ECF No. 14 ¶¶36–54.) In his request for relief, Lux requests compensatory damages against "Chief Raap in his official capacity," but only refers to the City of Whitewater by stating that it is required to indemnify the individual Defendants pursuant to Wis. Stat. § 895.46. (*Id.* ¶¶6, 46, 54.) The City and Chief Raap argue that any claims against both should be dismissed because the amended complaint is devoid of specific factual allegations sufficient to establish any theory of *Monell* liability against either of them. (ECF No. 33 at 4–10.)

In *Monell*, the Supreme Court recognized that municipalities could be "persons" and thus held liable for constitutional violations under Section 1983. 436 U.S. at 690–91. To prevail on a *Monell* claim, the plaintiff must establish (1) that he suffered a constitutional injury, and (2) that the City authorized or maintained a custom of approving the unconstitutional conduct. *Petty v.*

*City of Chicago*, 754 F.3d 416, 424 (7th Cir. 2014) (citing *Thompson v. Boggs*, 33 F.3d 847, 859 (7th Cir. 1994)). The Court treats the City and Chief Raap, who is sued only in his official capacity, as the same party for the purposes of *Monell* analysis. *See Monell*, 436 U.S. at 690 n.55 ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent . . . .").

*Monell* identified three circumstances in which a municipality could be legally responsible for a constitutional violation. First, a plaintiff can establish municipal liability by showing unconstitutional conduct that implements or executes an official policy adopted by the entity's officers. *Id.* at 690; *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017) (en banc) (citing *Los Angeles County v. Humphries*, 562 U.S. 29, 35 (2010)). Second, the plaintiff can show that the unconstitutional action was done pursuant to a municipal custom—even one that is not formally codified. *Monell*, 436 U.S. at 690–91; *see also Glisson*, 849 F.3d at 379. Third, a plaintiff may prove that a municipal actor with final decision-making authority within the entity adopted the relevant policy or custom. *See Monell*, 436 U.S. at 694; *Glisson*, 849 F.3d at 379.

The City and Chief Raap are correct that Lux has not alleged sufficient facts to state a *Monell* claim. The amended complaint includes no allegations aimed at Chief Raap, except that "he has authority over the Police Department for all actions at issue in this case. He is responsible for ensuring that policies and practices of the WPD comply with federal and state requirements for the treatment of citizens like the Plaintiff." (*Id.* ¶7.) Lux makes only similarly conclusory allegations against the City—"[a]t all times material, the individual Defendants were acting under color of the statutes, customer, and ordinances of the Whitewater Police Department." (*Id.* ¶44.) These allegations are insufficient. *Monell* requires "a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Com'rs v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell*, 436 U.S. at 694). Lux has alleged no such specific policy or custom that caused his alleged constitutional injuries. He seeks, essentially, to hold Chief Raap and/or the City liable under a theory of *respondeat superior*, which Section 1983 does not allow. *See Monell*, 436 U.S. at 692.

Lux once again seeks to avoid dismissal by arguing facts outside his current pleading. He argues that "Whitewater had this policy of using excessive force against African Americans and stopping and unlawfully arresting African Americans as a policy." (ECF No. 36 at 10.) He also argues that "these de facto policies lead to a . . . culture of indifference by which Whitewater Police

Officers were not required to follow policy and instead had policies which were racially motivated and retaliatory towards Lux." (*Id.*) But these allegations appear nowhere in the amended complaint. Lux cites *Doe v. Roe*, No. 12 C 9213, 2013 WL 2421771 (N.D. Ill. June 3, 2013), for the proposition that courts in the Seventh Circuit have allowed *Monell* claims to proceed on conclusory allegations "so long as facts are pled that put the defendants on proper notice of the alleged wrongdoing." (ECF No. 36 at 13 (quoting *Roe*, 2013 WL 2421771, at *6).) Here, Lux has not alleged that the City had any specific policy, practice, or custom that caused his alleged injuries. *See Roe*, 2013 WL 2421771, at *1–2. His *Monell* claim(s) must therefore be dismissed. *See Brown*, 520 U.S. at 403.

As a final note, without a viable *Monell* claim, Lux has no remaining claims against the City of Whitewater. Lux alleges that the City is liable under Wis. Stat. § 895.46 for any judgment entered against the officers because they were acting in the scope of their employment. (ECF No. 14 ¶¶6, 46, 54.) Section 895.46 requires municipalities to indemnify their officers and employees for any judgments against them while acting within the scope of their employment. § 895.46(1)(a). But Section 895.46 does not create a private cause of action for a civil rights plaintiff. *See Thuermer v. Village of Mishicot*, 272 N.W.2d 409, 412 (Wis. 1978); *see also Carlson v. Pepin County*, 481 N.W.2d 498, 503 (Wis. Ct. App. 1992). Although the City may be required to indemnify the officers if they are found liable, there are no claims remaining against the City and it is therefore no longer a proper defendant. *See Perez v. Guetschow*, No. 23-cv-153-pp, 2023 WL 6444905, at *1 (E.D. Wis. Oct. 3, 2023). Accordingly, the Court will dismiss the City of Whitewater (as well as Chief Raap) from this action.

## CONCLUSION

As explained above, Lux has plausibly alleged a Fourth Amendment claim for excessive force against Officers Boro, Beecraft, and Krahn but has not plausibly alleged an equal protection claim, nor any *Monell* claims against the City of Whitewater or former Police Chief Raap. Therefore, Defendants' motion to dismiss is denied as to Lux's excessive force claim against the officers and granted in all other respects.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, ECF No. 32, is **GRANTED in part** and **DENIED in part**. Lux may proceed with a Fourth Amendment claim for excessive force against Officers Boro, Beecraft, and Krahn. All other claims are **DISMISSED**.

Dated at Milwaukee, Wisconsin on November 21, 2024.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge